1  Adrienne Thomas
2  2003 Riddling Court
   Brentwood, CA 94513
3  Plaintiff in Pro Per
   Telephone: (510) 866-4882

4

**FILED**

**JAN - 5 2023**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5  **UNITED STATES DISTRICT COURT**

6  **NORTHERN DISTRICT OF CALIFORNIA**

7  Case No.: _____ C23-00065

8  **ADRIENNE THOMAS**

9  Plaintiff,

10  **vs.**

11

12  **PACIFIC GAS AND ELECTRIC COMPANY,**

13  Defendant[s],

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

1. WHISTLEBLOWER RETALIATION OF THE DODD FRANK §1057. EMPLOYEE PROTECTION ACT, eff. 07-21-2010
2. RETALIATION IN VIOLATION OF LABOR CODE § 1102.5
3. WRONGFUL TERMINAION IN VIOLATION OF PUBLIC POLICY
4. UNFAIR BUSINESS PRACTICIES (Bus. & Prof. Code §§ 17200 et seq.)
5. BREACH OF A UNION CONTRACT
6. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
7. DEFAMATION
8. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
9. DECLARATORY RELIEF

18

19

20      Plaintiff ADRIENNE THOMAS, alleges, on information and belief, the following I

21  support of her complaint:

22                          **JURISDICTION AND VENUE**

23      1.  This action arises under the whistleblower protection provisions of the Dodd-Frank

24  Consumer Protection Act of 2010, 12 U.S.C. § 5567.  Jurisdiction is invoked pursuant to 28

25  U.S.C. § 1331, as well as under 28 U.S.C. § 1343(a)(4), and 28 U.S.C. §§ 2201 and 2202. This

26  suit is authorized and instituted pursuant to the above federal statutes. The jurisdiction of this

27  Court is invoked to secure protection of and to redress deprivation of rights secured by the Dodd-

28

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**
- 1

Frank Act. This court has ancillary jurisdiction of the state law claims because they are sufficiently related to the federal claims.

2. Venue is proper under 28 U.S.C. § 1391 because Defendant's principal pace of business is in this district. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

3. Plaintiff ADRIENNE THOMAS (hereinafter "Ms. Thomas" or "Plaintiff") resides in Contra Costa County, CA. She was hired by Defendant on January 10, 2005, as an Investigator in the Law Department, to investigate issues, which rose to level of investigatory assessments and potential pay-outs. Plaintiff performed her job competently at all times. Plaintiff also held several other job titles within her almost 17yrs of tenure with the utility. The last job was held was a Sr. New Business Representative (Project Manager), at the time of the unlawful termination on January 05, 2022. As the facts below will demonstrate, Plaintiff reasonably believed she uncovered numerous violations of federal and state laws, inclusive of violations of company policy. Plaintiff appropriately following and exercised the chain company and followed the company slogan; "If You See Something Say Something", plastered over many of the company walls throughout various locations. Instead, of being commended and thanked for her efforts, by the utility and their management, Plaintiff was repeatedly threatened, subjected to false investigatory hearings based on falsified information, demeaned, ridiculed, stalked/followed, harassed and ultimately fired for trying to do the right thing.

**Key Parties Involved: (That should be severally reprimanded)**

**Valda Sanders** – Manager of Bay Region Service Planning Department
(Manager of the Dept and close friend outside of work to Wilmer Clark)

**Wilmer Clark** – Supervisor of Concord Service Planning Dept.
(Also, the employee that was a Stalker and the Supervisor that was very instrumental in the actions that have taken place against me and still an active employee)

**Louie James Hilario** – Supervisor Concord Service Planning Dept.
(Supervisor that was brought into the Department in August of 2019, due to the issues I was having with Wilmer Clark)

(still an active employee, who became complicit in the above individuals behavior for financial gain. A "big bonus in the top tier"; was offered to him to make sure he continued to treat me poorly. Witnessed by an employee in the metering department)

**Nick Souza and Dana Souza** – Colleagues in the Concord Service Planning Dept (Husband and Wife team, who blatantly lied and stated I hazed them and also advised I was harassing them, once I filed the stalking claim) The husband has been rumored to have been taking money from outside contractors for years. I had an African American Contractor for Seeno/Discovery homes share details with me about Nick Souza shaving monies off of contract's $10k each. Which I reported to Corporate Security in July of 2019. Instead the utility removed the African American Project Manager with Seeno/Discovery Homes and assigned an Asian Project Manager for all PG&E Projects.

4. At all times to this action Defendant, PACIFIC GAS AND ELECTRIC COMPANY, a utility within California, was d/b/a PG&E and was a publicly traded company (NASDAQ symbol: PCG) is the holding company for PG&E Corporation.

5. Defendant, PACIFIC GAS AND ELECTRIC COMPANY is a subsidiary of PG&E Corporation and one of the largest combined natural gas and electric energy companies in the United States.

6. Defendant, PACIFIC GAS AND ELECTRIC COMPANY, company website (www.pgecorp.com) illustrates how they pride themselves with their commitment to Diversity and Inclusion, as well as "Compliance and Ethics are at our core".

## EXHAUSTION OF REMEDIES

7. Plaintiff ADRIENNE THOMAS filed multiple complaints internally including speaking with lawyers on behalf of the company within the company to raise concerns with respects to unsafe and hazardous conditions, which were brought to the utility's attention, including Defendants Human Resource Department, Corporate Security Department, external Law Firms hired by Defendants, Compliance and Ethics Department, and the IFPTE Local 20 to no avail. External complaints to the Department of Fair Employment and Housing, EEOC, and the Occupational Safety and Health Administration with respects to retaliation and bullying received including failure to pay once the concerns were also filed and brought to Defendant PACIFIC GAS AND ELECTRIC COMPANIES attention.

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**

## FACTUAL ALLEGATIONS RELEVAANT TO ALL CAUSES OF ACTION

### Timeline of Complaints and Allegations Made to Defendant

8.  On or about April 2019, Plaintiff ADRIENNE THOMAS, filed a complaint with the Director of Service Planning and the Manager of Concord Service Planning – John Klavdianos regarding the Supervisor – Wilmer Clark failure to properly pay Plaintiff regular pay and Overtime hours worked.

9.  In addition, Plaintiff, ADRIENNE THOMAS, raised concerns with Defendant's PACIFICI GAS and ELECTRIC COMPANY Corporate Security Department on or about September 2019 with respects to allegations of an Employee – Nick Souza mishandling company contracts in exchange for financial favor, receiving special gifts from customers over and above the financial amount allotted.

10. The Plaintiff, ADRIENNE THOMAS, also raised concerns from September 2019 through July 2021 regarding said Employee Nick Souza and his wife Dana Souza receiving extreme amounts of favor as opposed to other employees with respects to shared workloads and properly distributed overtime hours, which ultimately impacted the entire workgroup in a negative fashion.

11. After making several complaints listed above Supervisor – Wilmer Clark began to follow Plaintiff around the office, through the hallways of the building, to her car at night, following Plaintiff through the parking garage, sitting on top of her desk to block her into her desk, walking past the Plaintiff's Desk sometimes up to 18 times per day to ensure a line of sight to continue to follow Plaintiff to her car or other areas of the building, sending e-mails to Plaintiff's personal e-mail without her permission, mailing letters to the Plaintiff's home threatening to terminate the Plaintiff's employment (and forged the Manager's Signature in the letter), writing and forging letters pretending to be customer's to paint the Plaintiff in the bad light with the utility (specifically = 312 Railroad for a wine bar named The Find), setting up multiple frivolous investigatory meetings with no basis just to harass Plaintiff, falsely and blatantly accusing Plaintiff of falsifying timecards (because I would not share my whereabouts when using 3hrs paid vacation for a personal appointment) and having other Supervisors in the workplace contact

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**
- 4

friends of the Plaintiff to spread the word she would be terminated.  It is also the Plaintiff's belief the various calls to her home from "trunk or cloned numbers" were made by the Defendant's in their continuing efforts to make the Plaintiff uncomfortable or cause the Plaintiff to quit her job in lieu of terminating the Plaintiff's employment.

### Harassment, Intimidation and Bullying Suffered by Plaintiff

12. Plaintiff, ADRIENNE THOMAS, began to experience differential treatment in the workplace and including much more harsh treatment than other employees in the work group.

13. Plaintiff, ADRIENNE THOMAS, was frequently underpaid her regular pay or OT pay was completely ignored or not paid, as punishment for reporting the incidents.

14. Plaintiff, ADRIENNE THOMAS, was frequently locked or blocked from attending virtual meetings with her peers by Supervisor Wilmer Clark, Supervisor LJ Hilario and Manager Valda Sanders.

15. Plaintiff, ADRIENNE THOMAS, had her access card disabled multiple times to further antagonize the Plaintiff or attempt to prevent Plaintiff from having access to her work supplies and materials to precent her from properly completing her work.

16. Plaintiff frequently experienced ridicule and subject to disparaging in front of others and the workgroup.  In an attempt to make the Plaintiff feel less than and make it appear that Plaintiff was incompetent and incapable of properly handling her work load.

17. The Supervisor's and Manager's would also request negative verbal or written Correspondence from several of Defendant PACIFIC GAS AND ELECTRIC COMPANY, Customer's and shareholders in attempt to support the negative and false allegations frequently spread by Plaintiff's immediate Supervisor's and Managers (including Employee Nick Souza).

18. Plaintiff was also referenced as a "Drive by Shooter", and shared the comments with amongst themselves and other employees, to demonstrate a disparaging image of Plaintiff, by Defendants.

19. Plaintiff, also allegedly had the direct/personal cell phone number of the previous Sr. Vice President – Michael Lewis, which is the nasty tawdry rumor the Supervisor, Manager and said employee would continue to recklessly spread.

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**
- 5 -

20. The Managerial Team would frequently file forged complaints pretending to be me, to decipher information from my personal knowledge to them with defending themselves from the allegations presenting directly to the Defendant.

21.  Moreover, and most important Plaintiff personally overheard the Manager Valda Sanders tell Supervisor – Wilmer Clark; "I'm going to fire her; let that Bitch fight to get her job back". This occurred on the same date as the made-up investigatory meeting; alleging I falsified a timecard, because I would not share with Supervisor, Wilmer Clark my whereabouts when I utilized 3 hours of paid vacation time.  Both Manager – Valda Sanders and Supervisor Louie James Hilario was present, during this meeting.

**Additional Punishment and Consequences for Making Complaints Against Defendant**

22. When Plaintiff, ADRIENNE THOMAS, did not resign from the company or succumb as a result of the illegal actions, falsified documents and false statements made against her, the behaviors of Defendant, PACIFIC GAS AND ELECTRIC COMPANY, became much more aggressive and dire.

23.  Defendant, PACIFIC GAS AND ELECTRIC COMPANY increased Plaintiff's workload 150% covering commercial territory in Martinez, Concord, Alamo, Danville and Blackhawk. and added all residential work within the city of Walnut Creek (which has historically been handled by 3-4 Sr. New Business Representatives / Project Managers).

24. Plaintiff, ADRIENNE THOMAS, asked for additional hours to maintain and keep up Increased work load suggested by Manager Valda Sanders, Supervisor Wilmer Clark and Supervisor Louie James Hilario.   The request was denied; although, other employees including Employee Nick Souza and his wife were allowed to work far more OT Hours to maintain a non-existent backlog.  Employee Manalo Evangelista was also allowed a lot of extra hours wit far less work in his back log.

25. Despite, the Managers and said Employee within their scope of work on behalf of Defendant, PACIFIC GAS AND ELECTRIC COMPANY attempting to paint a false narrative About Plaintiff, ADRIENNE THOMAS and her work ethic, morals and standards, the Plaintiff's work did not falter.   Despite the diabolical attempts by her immediate Supervisors and Manager.

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**

26. Plaintiff would work the extra hours despite not getting paid, to prevent the customer's from suffering, despite the workplace and inter-company turmoil.

27. When Plaintiff's work did not suffer, despite the Managerial plan to paint Plaintiff as a bad employee who is inept and incapable of performing her work, the Managers continued to Share a letter written by themselves and Employee Nick Souza with respects to a project Plaintiff had a 312 Railroad Avenue, Danville, CA.   The letter has been stated be to be absolutely horrible about Plaintiff ADRIENNE THOMAS, yet the Managers have never shared the letter with Plaintiff despite her many requests exceeding 10 times.  Plaintiff can also show how her image was tarnished and the Director of Concord Service Planning referred to Plaintiff as; "the worst employee", the Director has ever had.  It is noteworthy to add, that Plaintiff has only had what she believes to be 3 or 4 in person conversations, which were very polite and respectful.   How the Director has drawn her conclusion is unbeknownst to Plaintiff.

28. When the increased workload and falsified correspondence written by Management and Management and said employee, the Managerial Team then began to report the had written me Up for not returning a call to customer within 48hrs.   However, Defendant's Standard TD-9100-P states, all calls must be returned to customers within 2days, which Plaintiff complied.

29. Defendant's blatantly lied and distorted the truth to fulfill their wicked desires to unlawfully terminate the Plaintiff's employment, after reporting their breaking the law and ignoring company rules and policies to support their personal vendetta against Plaintiff and making her life extremely hellacious because she did exactly what the Defendant's have frequently stated verbally and posted on the walls of many offices; "If You See Something Say something".

30. Plaintiff, ADRIENNE THOMAS was invited to a Teams Meeting on January 5, 2022 and informed no time off would be approved despite her request.  The Teams Meeting was attended by Manager Valda Sanders, Supervisor Minh Nguyen, Plaintiff ADRIENNE THOMAS and Union Representative Kathy Cleairmont.   Plaintiff, was informed at the request of Manager Valda Sanders, her employment was terminated, she was not allowed on company property and could no longer work for the utility or any of their contractors within the entire Defendant

service territory from the Oregon Border down to the Bakersfield County and City limits. Plaintiff was informed her work and work ethics were poor and she had been written for failing to call a customer back within 48hrs; none of which ever occurred. In addition, Plaintiff never received a Termination Letter, any Cobra or Medical Information, her last paycheck on the last date of pay, and was not allowed to receive any of her personal property. The only thing Plaintiff was asked to do was return the company phone and laptop. Defendant's also demanded Plaintiff's passwords to scour through the devices themselves, which is against company rules and polices and passwords should not be shared with anyone.

31. Plaintiff was unable to draw unemployment for almost 2 months, because no paperwork was ever shared with the State of California unemployment offices with respects to Plaintiff's termination.

32. In fact, the Defendant's further falsified additional documents stating that Plaintiff retired from the utility after 5days shy of 17yrs of service and Plaintiff was even featured in a Newsletter/Periodical the Defendant's print, illustrating recent retires and Plaintiff was listed as one of the retirees.

## FIRST CAUSE OF ACTION

### (WHISTLEBLOWER RETALIATION OF THE DODD FRANK §1057 EMPLOYEE PROTECTION ACT)

33. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

34. At all material times Section §1057 of the Dodd Frank Act was in effect and binding on Defendant. It prohibits employers such as Defendant from discharging, constructively discharging, demoting, threatening, harassing or in any manner discriminating or retaliating against any employee because he or she provided information, caused information to be provided, or assisted in an investigation by a federal regulatory or law enforcement agency, or an internal investigation by the company relating violations and regulations of federal law relating to fraud against shareholders. In addition, an employer may not discharge or in any manner

retaliate against employee because he or she filed, caused to be filed, participated in, or assisted in a proceeding relating to violations and regulations of federal law relating

to fraud against shareholders. If an employer takes retaliatory action against an employee because he or she engaged in any of these protected activities, the employee can file a complaint with the Secretary, United States Department of Labor, Occupational Safety and Health Administration ("OSHA").

35. Plaintiff timely filed a whistle blower complaint with OSHA and Plaintiff has not been the cause of any delay in the issuance of a decision.  Accordingly, Plaintiff is entitled to seek relief in district court.

36. Defendant harassed, threatened, discharged and retaliated against Plaintiff, after Plaintiff made oral and written complaints regarding what she reasonable knew to be illegal and unlawful conduct in violation of federal and state statutes, rules and regulations.  Plaintiff made complaints to Defendant, by and through it's agents and employees, as well as the OSHA, EEOC and DFEH.

37. Plaintiff is informed and believes, and thereon alleges that because of making complaints regarding Defendant's illegal conduct and/or conduct Plaintiff reasonably believed to be illegal, Plaintiff was discharged from her employment and/or otherwise discriminated and retaliated against by Defendant after she made the aforesaid complaints about the illegal conduct.

38. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will Continue to suffer pain and mental anguish and emotional distress.

39. Plaintiff has further suffered and will continue to suffer a loss of earnings and other Employment benefits, whereby Plaintiff is entitled to general compensatory damages.

40. Defendant's actions were willful violations of the above-mentioned federal laws and regulations.  As, a direct result, Plaintiff has suffered and continues to suffer substantial losses related to the loss of wages, is entitled to recover costs, expenses and attorney fees in seeking to compel Defendant to fully perform its obligations under state and federal law, in amounts according to proof.

41. The conduct the Defendant described hereinabove was outrageous and was executed with

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**

malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

42. Defendant committed the acts alleged hereinabove by acting knowingly and willfully, With the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives Amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover nominal, actual, compensatory, punitive and exemplary damages in amounts according to proof, to the full extent allowable by law, in addition to any other remedies and damages allowable by law.

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of Labor Code § 1102.5)

43. As a separate and distinct case of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of actions though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

44. At all times material to this Complaint, California Labor Code § 1102.5 was in effect and binding on Defendant. This section requires Defendant to refrain from retaliating against an employee for refusing to participate in activity that is reasonably believed to be a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

45. Plaintiff had a reasonable belief that Defendant was violating state and federal laws, and Reported those violations to Defendants management as well as lawyers and investigators, as Defendant well knew and as alleged above.

46. Defendant retaliated against Plaintiff for whistleblowing, by harassing, threatening and terminated her employment, despite not having any valid issues or reprimands all in violation of Labor Code § 1102.5.

47. As a direct and proximate result of such retaliation, Plaintiff has been damaged in a sum according to proof.

48. Plaintiff requests all available relief under Labor Code § 1102.5 including damages and the imposition of a civil penalty of $10, 000.00 for each violation.

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**

## THIRD CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

49. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set therein, excepting those allegations which are inconsistent with this cause of action.

50. At all times, this law prohibits employers such as Defendant from discharging, constructively discharging, demoting, threatening, harassing or in any manner discriminating or retaliating against any employee because he or she provided information, caused information to be provided, or assisted in an investigation by a federal regulatory or law enforcement agency, or an internal investigation by a federal regulatory or law enforcement agency, or an internal investigation by the company relating to violations of rules and regulations or violations of federal law relating to fraud against shareholders, by pretending to be a customer(s) of the utility, and falsely representing customer's by falsifying their information in written correspondence against an employee of Defendant, PACIFIC GAS AND ELECTRIC COMPANY.

51. Dodd-Frank prohibits employers from discharging, demoting, suspending, threatening, harassing, directly or indirectly, or in any other manner discriminating against whistleblowers in the terms and conditions o employment because of any lawful act done by the whistleblowers in providing information, in initiating, testifying in, or assisting in any investigation or judicial administrative act based upon or related to such information, or in making disclosures that are required or protected under Dodd-Frank.

52. At all times mentioned in this complaint, California Labor Code Section 1102.5 was in full force and effect, and was binding on Defendant.  This law requires Defendant to refrain, among other things, from retaliating against employees who refuse to participate in or condone conduct they reasonably believe to violate state or federal law

### FOURTH CAUSE OF ACTION

### (Unfair Business Practices (Bus. & Prof. Code §§ 17200 et seq.)

53. As a separate and distinct cause of action, Plaintiff complains and realleges all of the

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**

allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action

54. California Business & Professions Code § 17200 provides that unfair competition shall mean any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising and any act prohibited by Section 17500, et seq., of the Business & Professions Code. Section 17203 of the Business & Professions Code provides that a court of competent jurisdiction may enjoin any conduct constituting unfair competition under § 17200.

55. Each of the aforesaid laws is a fundamental policy of the State of California.

56. Plaintiff believes and thereon allege that his whistleblowing, refusing to condone illegal activity, and engaging in protected activity, was or were a motivating factor in Defendant's conduct as alleged hereinabove, including terminating Plaintiff.

57. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven according to proof.

58. Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

59. Defendant's conduct as alleged above violates multiple state and federal laws and constitutes unlawful business practices within the meaning of California Business & Professions Code § 17200, et seq.

60. Plaintiff is informed and believes and thereon alleges that Defendant continues to engage in some or all of the aforementioned unfair and unlawful business practices.

61. Plaintiff seeks an injunction prohibiting Defendant from engaging in the unfair and unlawful conduct described herein. Plaintiff also seeks attorneys' fees pursuant to the private

attorney general doctrine, as codified in California Civil Code § 1021.5.

## FIFTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

62. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

63. Plaintiff and Defendant had an agreement that Plaintiff would be able to perform the duties of a Sr. New Business Representative in accordance with federal and state regulations and commonly understood business practices, without fear of losing her job, being threatened and intimidated with false allegations and reports of poor performance. Repeatedly subjected to false investigatory meetings, reduced because she spoke up about unlawful and improper practices in the workplace.  The agreement between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing, which obligated Defendant to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would deprive Plaintiff of the benefits of the agreement.

64. Plaintiff performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the agreement.

65. Plaintiff is informed and believes, and thereon alleges, that Defendant knew Plaintiff had fulfilled, and was ready, willing and able to continue to fulfill all of his duties and conditions under the agreement.

66. Defendant breached the implied covenant of good faith and fair dealing under the agreement by terminating Plaintiff without good cause.

67. As a direct, foreseeable and proximate result of Defendant's breach of the implied covenant, Plaintiff has suffered and sustained damages in an amount according to proof.

1

2

## SIXTH CAUSE OF ACTION

### (Breach of Union Contract)

3  68. There was and is an explicit IFPTE Local Union 20Contract in place, which provides

4  clear steps and remedies for Discipline Processes, if needed.

5  69. Defendants blatantly ignored every aspect of the union contract and agreement as if the

6  contract never existed.

7  70. The proper rules nor steps were ever followed and in fact Defendant's and their,

8  representatives in the scope of their respective managerial job titles completely abused the

9  contract as it was written.

10

11  ## SEVENTH CAUSE OF ACTION

12  ### (Intentional Infliction of Emotional Distress)

13

14  71. As a separate and distinct cause of action, Plaintiff complains and realleges all of the

15  allegations contained in this complaint, and incorporates them by reference into this cause of

16  action as though fully set forth herein, excepting those allegations which are inconsistent with

17  this cause of action.

18  72. Defendant engaged in outrageous conduct towards Plaintiff with the intention to cause, or

19  with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional

20  distress, and with wanton and reckless disregard for the injurious result to Plaintiff, as set forth

21  hereinabove. The conduct set forth hereinabove was extreme and outrageous and an abuse of the

22  authority and position of Defendant. The above-described conduct was intended to cause severe

23  emotional distress, or was done in conscious disregard of the probability of causing such distress.

24  This conduct exceeded the inherent risks of employment and was not the sort of conduct

25  normally expected from an employer.

26  73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained

27  and continues to sustain pain and suffering, extreme and severe mental anguish and emotional

28  distress; Plaintiff has incurred and will continue to incur medical expenses for treatment, and for

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**

- 14 -

incidental medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven according to proof.

74. Plaintiff is informed and believes and thereon alleges that Defendant and its managing agents, managers, officers, and/or directors committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.

### EIGHTH CAUSE OF ACTION

#### (Defamation Per Se and Compelled Self-Defamation)

75. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

76. On information and belief, Defendant through its agents needlessly made defamatory statements about Plaintiff to numerous persons including coworkers, supervisors and prospective employers of Plaintiff.  Information as to a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

77.  On information and belief, Defendant through its agents needlessly made defamatory statements about Plaintiff to numerous persons including coworkers, supervisors and prospective employers of Plaintiff.  Information as to the specific identity of the persons publishing the relevant statements, and the recipients of the statements is in the hands of Defendant and other third parties, and will be subject to discovery.

78. On information and belief, Plaintiff believes defamatory statements by Defendant and their agents were made orally. While defamatory statements may also have been made in writing, Plaintiff does not presently have information concerning written statements, which is in the

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**

hands of Defendant and of which Defendant have superior knowledge, as will be subject to discovery.

79. Plaintiff does not presently have knowledge of the exact wording of the defamatory statements at issue, other than as alleged hereinabove, such information being in the hands of Defendant and third parties. On information and belief, the general substance of these defamatory statements include false express and implied assertions also including insinuation and innuendo that Plaintiff's performance was deficient, that he failed to perform his duties in a professional manner, that she was incompetent, that she suffered from a psychiatric illness, that she was trying maliciously to harm Defendant, and that Plaintiff was lying to with respects to any complaints previously made to deflect from her alleged poor work performance.

80. Such assertions were intended as statements of fact and not opinion.

81. Plaintiff is informed and believes that Defendant, by the herein-described acts, conspire to, and in fact, did negligently, recklessly, and intentionally caused excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons and the community, and/or with a failure to investigate adequately or verify purported facts underlying the defamatory statements.

82. The precise dates of these publications are not presently known to Plaintiff, as the information is in the hands of Defendant.  However, Plaintiff is informed and believes the publications were published and foreseeably republished in or around August 2019 through January 2021, and after that date, to first cause, and then justify, Plaintiff's wrongful and illegal termination, and to cause Plaintiff to be unable to secure new employment for a considerable period of time despite reasonable efforts to do so.

83. These publications were outrageous, negligent, reckless, intentional, and maliciously published and republished by Defendant, and each of them.  Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendant, and each of them, were and continue to be, foreseeably published and republished by Defendant, their agents and employees, recipients, and in the community. Plaintiffs hereby seek damages for these publications and all foreseeable republications discovered up to the time of trial.

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**

84.  During the above-described time-frame, Defendant, including through its agents as set forth above, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendant published this defamation are believed to include, but are not limited to, other agents and employees of Defendant, and each of them, and the community, all of whom are known to Defendant, and each of them, but unknown at this time to Plaintiff, including Directors and Officers of the Defendant.

85. Further, Defendant had knowledge and/or reason to believe that Plaintiff would be under a strong compulsion and pressure to disclose the contents of these defamatory false statements to third persons, namely potential employers, colleagues, friends, family and other individuals, as she in fact did.

86. The defamatory publications set forth above consisted of knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation.

87. Plaintiff is informed, believes and fears that these false and defamatory per se statements, including statements regarding Plaintiff's occupational, business, professional, and personal reputation, will continue to be published by Defendant, and each of them, and will be foreseeably republished by its recipients, all to the ongoing harm and injury to Plaintiff's occupational, business, professional, and personal reputation. Plaintiff also seeks redress in this action for all foreseeable re-publications, including his own compelled self-publication of these defamatory statements.

88. The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendant, and each of them, but unknown to Plaintiff at this time.

89. None of Defendant's defamatory publications and statements against Plaintiff referenced above is true. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently,

recklessly, and intentionally published and foreseeably republished by Defendant, and each of them, and foreseeably republished by recipients of Defendant's publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

90. Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendant, to cause further damage to Plaintiff's professional and personal reputation, to cause him to be fired, to justify her firing and to destroy her credibility within the workplace amongst her peers and to hierarchy.

91. Each of these publications by Defendant, and each of them, was made with knowledge that no investigation supported the unsubstantiated and obviously false statements. Defendant published these statements knowing them to be false and unsubstantiated by any reasonable

investigation and were the product pure malice.

92. Each of these publications by Defendant, and each of them, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. Defendant published these statements knowing them to be false, unsubstantiated by any reasonable investigation and were the product of hostile witnesses. These acts of publication were known by Defendant, to be negligent to such a degree as to be reckless. In fact, not only did Defendant Have no reasonable basis to believe these statements, but it also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendant excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

93. The above complained-of publications by Defendant were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, employment and employability. Defendant published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege

existed to protect Defendant from liability for any of these aforementioned publications or republications.

94. As a proximate result of the publication and republication of these defamatory statements, and each of them, Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

95. Defendant committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendant, its agents and employees, herein alleged were known, ratified and approved by Defendant. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendant, for these wanton, obnoxious, and despicable acts in an amount according to proof.

## NINTH CAUSE OF ACTION

### (Declaratory Relief)

96. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

97. A dispute and an actual controversy has arisen between parties regarding the enforceability document purporting to compel Plaintiff to arbitrate certain claims against Defendant.

98. Plaintiff asserts that under Armendariz v. Foundation HealthCare (2000) 24 Cal.4th 83 and its progeny, as well as under Dodd-Frank, and the public policies of California and the United States, that the document is unenforceable for a number of reasons as set forth in statutes

and the case law.  On information and belief Defendant asserts that the document is enforceable and that Plaintiff must bring his claims in arbitration.

99. Plaintiff desires a judicial determination of the parties' rights and obligations of the parties with respect to the document, and a declaration that the arbitration document is invalid because it lacks mutuality, is procedurally and substantively unconscionable, and violates public policy.  A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain his rights and duties under the alleged arbitration agreement, and not be forced to forego his constitutional rights to a trial if needed.  Plaintiff does not seek to avoid the alleged agreement to arbitrate unless the alleged arbitration agreement is declared invalid and/or unenforceable.

## PRAYER FOR RELIEF

**Wherefore, Plaintiff prays for judgment against Defendant as follows:**

1. For compensatory damages, including lost wages, medical benefits and other employment benefits, according to proof; including employment reinstatement

2. For double back pay with interest;

3. For general, mental and emotional distress damages according to proof;

4. For punitive damages on each cause of action for which they are awardable;

5. For all civil penalties awardable;

6. For an award of interest, including prejudgment interest, at the legal rate;

7.  For an injunction ordering PG&E to cease and desist its unlawful practices;

8. For costs of suit incurred;

9. For a declaratory judgment that the alleged arbitration agreement is invalid because it lacks mutuality, is unconscionable, violates public policy and is prohibited under the Dodd-Frank Act;

10. For an award of litigation costs and attorneys' fees as awardable on each cause of action pursuant to Dodd-Frank, the private attorney general doctrine, as codified in California Civil Code Section 1021.5, and any other available bases;

11. For such other and further relief as the court deems just and proper.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**

Executed this 4th day of January 2022, at Brentwood, California.

_____

Adrienne Thomas in Pro Se'

**PLAINTIFF THOMAS COMPLAINT FOR DAMAGES AND OTHER RELIEF**

- 21

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Oakland Local Office**
1301 Clay Street, Suite 680-N
Oakland, CA 94612
(510) 956-0004
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 11/23/2022

**To:** Ms. Adrienne L. Thomas
2003 Riddling Court
BRENTWOOD, CA 94513
Charge No: 555-2023-00088

EEOC Representative and email:    Ahlam Abdellatif
Investigator
ahlam.abdellatif@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

**Steven Hunt**
Digitally signed by Steven Hunt
Date: 2022.11.23 13:24:57 -08'00'

Steven Hunt
Local Office Director

**Cc:**
Stacy A Campos
Pacific Gas and Electric Company
PO BOX 7442 LAW DEPARTMENT
San Francisco, CA 94120


Please retain this notice for your records.



**PAYROLL CHANGE**

Prepare Date
01/04/2005

**Pacific Gas and Electric Company**

COPY

Tag Number
141322

| SSN | Complete Legal Name | | Init. | Date Emp. |
|---|---|---|---|---|
| | **THOMAS, ADRIENNE L** | | A L | 01/10/2005 |

| Birth Date | Sex | Marital | Exemptions | Withholding Tax | Last Day Worked |
|---|---|---|---|---|---|
| | | | | $0.00 | |

| Street Number | City | State | Zip |
|---|---|---|---|
| | | | |

|  | PRESENT | PROPOSED | |
|---|---|---|---|
| Division | | SR VP & GENERAL COUNSEL | UT |
| Department | | SAFETY HEALTH & CLAIMS | 20 |
| Location | | SAN FRANCISCO | 05 |
| Function | | SAFETY HEALTH & CLAIMS | 05 |
| Position Code | | | 1439 |
| Classification | | CLMS INV, ASC | 4352 |
| Rate Amount | | | $4,420.00 |

| Class Status |
|---|
| Reason Code |
| Basic Code |

Effective Date   01/10/2005

| To cancel a position other than the one shown on the "PRESENT" side | Div | Dept | Loc | Func | Postn | Effective Date |
|---|---|---|---|---|---|---|

Code
1

PCC        : 10451
Transmittal : 088

PROPOSED

| Proposed Increment Amount | Proposed Increment Percent |
|---|---|

| | Name | Social Security No. | Date Job Vacated |
|---|---|---|---|

| New/Chg | Class Code | Union | TMTL# | PCC | Pay Code | O.T. Code |
|---|---|---|---|---|---|---|
| C | | | | | | |

******* New Hire *******

APPROVED

DIRECTOR
SAFETY, HEALTH & CLAIMS DEPT.

| Prepared By | Extension |
|---|---|
| BY | |

Authorizers:

APPROVED  01/04/2005

| Local Office | Local HR | Employee |
|---|---|---|



PG&E Benefits Service Center
PO Box 9920
Providence, RI 02940-4020

December 12, 2022

Adrienne L Thomas
~~2003 RIDDLING COURT~~
~~BRENTWOOD, CA 94513~~

**Subject:** Open Enrollment Confirmation Statement

Dear Adrienne L Thomas:

This statement confirms the coverage and/or cost changes you elected for 2023 benefits during Open Enrollment.

**Please review this statement to confirm your PG&E Health and Welfare coverage and costs, as well as any dependent information you may have provided.** Your benefit elections will remain in effect January 1, 2023 through December 31, 2023, unless you cancel your coverage or you have a life event change - such as getting married or having a baby - or a change in your employment status that requires an update to your benefits. You must be enrolled in a PG&E sponsored medical plan to be eligible to request a benefit change due to a change in status event. You must notify the PG&E Benefits Service Center of a life event within 31 days of the change. Call the PG&E Benefits Service Center at **1-866-271-8144** Monday - Friday from 7:30 AM to 5:00 PM Pacific time or log in your myPlans Connect account to make your life event update.

If you added any new dependent(s) to your coverage during this year's Open Enrollment, you are required to provide documentation to validate their eligibility. Dependent(s) that require documentation are marked as "Pending Verification" in the Dependent Information section.

You are required to provide the Social Security Number for all covered participants. If the Dependent Information section lists one or more individuals with a Social Security Number as "Not on File," log on to myPlans Connect by visiting mypgebenefits.com > Manage Your Benefits to update your family member.





#2N3H2KPVPD

## Dependent Information

If applicable, your dependents' coverage information for health benefits is listed below. To see all personal and coverage information we have on file, please log on to myPlans Connect by visiting mypgebenefits.com.

| Dependent Details |
|---|
| No Dependents on file |

## January 1, 2023 Benefit Elections

| Benefit | Plan | Election | Your Monthly Premium | PG&E Monthly Premium |
|---|---|---|---|---|
| Non-Medicare Medical | Coverage Waived | No Coverage | $0.00 | $0.00 |
| Retiree Medical Savings Account (RMSA) Under 65 | Coverage Waived | No Coverage | $0.00 | $0.00 |
| Retiree Medical Savings Acct (RMSA) SP/ DP Under 65 | Coverage Waived | Coverage Waived | $0.00 | $0.00 |
| Retiree Life Insurance | $8,000 | $8,000.00 | $0.00 | $49.03 |

| Totals Summary | Your Monthly Premium | PG&E Monthly Premium |
|---|---|---|
| Credits | $0.00 | $0.00 |
| Total Cost | $0.00 | $49.03 |

## Beneficiary Designation - Retiree Life Insurance

| Beneficiary Details |
|---|
| You do not currently have any beneficiaries on file. To add your beneficiary, log in to myPlans Connect and click Manage Beneficiaries or call the PG&E Benefits Service Center at ███████████. |

If you have any questions about this communication, please contact the PG&E Benefits Service Center at **1-866-271-8144** or via Live Chat by visiting **www.mypgebenefits.com** > Manage Your Benefits > MyPlansConnect. Representatives are available Monday through Friday from 7:30 AM to 5:00 PM Pacific time.

Sincerely,

PG&E Benefits Service Center





PG&E Retirement Team
P.O. Box 5546
Concord, CA 94524



April 2022

Dear Retirement Plan Participant,

Enclosed is the Annual Funding Notice for the Pacific Gas and Electric Company (PG&E) Retirement Plan ("the Plan") and the annual notification of your ability to receive a personalized pension benefit statement. These notices are purely informational and are required to be delivered to you under the Pension Protection Act of 2006 (PPA). No action is required from you.

**Annual Funding Notice**
This notice provides you with information on the financial condition of the Plan and does not require any action on your part. Please note the format of the notice was developed by the Department of Labor to satisfy the PPA reporting obligation.

**Personalized Pension Benefit Statement**

**Current Employees Entitled to a Future Pension Benefit**
If you are an employee and are not already receiving your pension benefit, you have the right to receive a personalized benefit statement showing you how much of a pension benefit you have accrued under the PG&E Retirement Plan. The statement will show the vested pension benefit you have accrued—or, if you are not vested, it will show the earliest date your benefit will become vested. To calculate your accrued pension and print your personalized statement within the PG&E network, you may go to *PG&E@Work For Me* > About Me > My Retirement > PensionConnect > Estimate Your Pension. Or, you can calculate and print your personalized statement from home by logging in to PG&E's PensionConnect at **myPensionConnect.com**.

**Non-Employee Participants Entitled to a Future Pension Benefit**
If you are not a current employee, but you are entitled to a pension benefit and have not started receiving payments, you have the right to receive a personalized benefit statement showing your vested pension benefit under the PG&E Retirement Plan. You can calculate and print your personalized statement by logging in to PG&E's PensionConnect at **myPensionConnect.com** or by calling the PG&E Pension Service Center at **1-800-700-0057**.

**Retired Employees Already Receiving a Pension Benefit**
If you are retired and are already receiving your pension benefit, the personalized pension benefit statement does not apply to you unless you are rehired and accruing additional benefits.

If you do not have access to the PG&E PensionConnect, need assistance accessing your personalized pension benefit statement, or to request a paper statement, call **1-800-700-0057**.

**Your Contact Information**
To make sure you receive your benefits and any benefit communications pertaining to the Plan, it is critical that you keep your contact information current. If you move after you terminate employment, please update your address information through our self-service website by visiting **myPensionConnect.com** or by calling us at 1-800-700-0057. You must also keep us apprised of any changes to the following information:

- your name and address;
- your beneficiary's name and address; and
- any other contact information maintained by the plan.

Keeping this information up-to-date will ensure that you (or your beneficiary) receive your benefit payments as well as any important plan communications without undue delay.



PG&E Benefits Service Center
PO Box 9920
Providence, RI 02940-4020

January 12, 2022

Adrienne L Thomas
~~2411 REDDING COURT~~
~~BRENTWOOD, CA 94513~~

Subject: Important PG&E Health and Welfare Information

Dear Adrienne L Thomas:

Congratulations on your retirement! Our records indicate that you recently retired or will be retiring from PG&E, and are eligible to commence post-retirement benefits on February 1, 2022.

This communication highlights the retirement benefit available to you as part of the PG&E Health and Welfare Benefit Plan. Go to the PG&E Benefits Service Center online at mypgebenefits.com to review your benefits options and make your elections. If you wish to enroll and participate in the PG&E Health and Welfare Benefit Plan, you must submit your elections by **March 4, 2022**. When you enroll in the Retiree Medical plan, you will automatically receive monthly invoices if there is an associated cost.

If you choose not to enroll for coverage, you may do so at a future open enrollment period.





**Family Member Information**

If you add any new dependent(s) to your coverage as part of your enrollment, you are required to provide documentation such as a marriage certificate for a spouse, state- county- or city-issued certificate of domestic partnership or birth certificate for your child to validate their eligibility. Dependent(s) that require documentation are marked as Pending Verification in the table below.

You are required to provide the Social Security Number for all covered participants. If the table below lists one or more individuals with a Social Security Number as "Not on File," log on to myPlans Connect by visiting mypgebenefits.com to update your dependent(s)' Social Security Number.

Your dependents' coverage information for health benefits is listed below. To see all personal and coverage information we have on file, please log on to myPlans Connect.

| Dependent Details |
| --- |
| No Dependents on file |



Package_Batch_10_03_Page-6222331010877632906default

#2N492HPTEB

MA'AM:                    1:45 P.M.

I'm IN RECEIPT OF
THE ITEMS ON THE
PORCH.

— LAPTOP, CHARGER
— PHONE

THANK YOU, ALL THE
BEST TO YOU,

LEONARD

Scale: 1 square = _____

12-5-2021

MA'AM: 1:45 P.M.

I'm IN RECEIPT OF THE ITEMS ON THE PONCH.

— LAPTOP, CHARGER
— PHONE

THANK YOU, ALL THE BEST TO YOU,

LEONARD

**Pacific Gas and Electric Company®**

## Electric Distribution SP&D – Responding to Customer Requests and Inquiries

6.2 (continued)

4. UPDATE the automatic replies (out of office) feature in Outlook so customers can see if an individual is available.

   a. WHEN taking a pre-arranged vacation,

      OR

      WHEN scheduled to be out of the office,

      THEN INLCUDE a backup employee's name and contact information (office number, and PG&E cell phone number).

## 7   Written Correspondence

7.1   Service planning representative employees PERFORM the following actions:

1. RESPOND to all written requests, including but not limited to email, letters, and text messages, within 2 business days.

2. PROVIDE the following information in writing:

   a. A bid for PG&E design services, as described in California Public Utilities Commission (CPUC) Decision 97-12-099, "Order Instituting Rulemaking on the Commission's own motion to consider the line extension rules of electric and gas utilities," dated December 16, 1997.

   b. Acknowledgement of all requests for new service or rearrangement/relocation of existing service, including the following information:

      • Customer choice-option selection forms

      • Applicable tariff information

      • Appropriate rate schedule information

      • Cost responsibility

      • Requested electric service voltage or required gas pressure

      • Description of proposed work

      • Request for an EA (SEE Utility Procedure TD-9100P-03, Attachment 1)

3. ENSURE that all contractual correspondence includes a sunset clause.

4. ENSURE that all written correspondence and pertinent information is attached electronically to SAP.



**Pacific Gas and Electric Company®**

# Electric Distribution SP&D – Responding to Customer Requests and Inquiries

8      **Data Integrity/Date Management**

This section applies to the following employees:

- Senior new business representative

- New business representatives

- IPE's

- Operating clerks supporting SP&D

- Express connection estimators

- ADEs

- Supervisors

- Managers

These employees must PERFORM the following actions:

8.1    ENSURE that customers are proactivity informed of projects' statuses.

8.2    MAINTAIN data integrity in SAP for assigned projects.

8.3    NOTE the customer's name, the project status, and communication updates in SAP long text.

9      **Commitment to Customer Satisfaction**

9.1    SP&D customer satisfaction personnel FORWARD all customer referrals to service planning supervisors for resolution.

9.2    Supervisors COMPLETE the following tasks:

1.     CONTACT the customer within 24 hours, or the next **business day**, AND ADDRESS concerns courteously and professionally.

2.     COMPLETE all root cause analysis and submit to customer satisfaction personnel within 48 hours.

9.3    Customer satisfaction personnel PERFORM the following actions:

1.     MONITOR all referrals to ensure customer expectations are met.

2.     PROVIDE a monthly summary report to SP&D leadership.

Sutter East Bay Medical Foundation

Name: Adrienne Thomas | DOB: 11/24/1965

# Letter Details

 Sutter Health
Sutter East Bay
Medical Foundation

December 8, 2021

**Courtesy Insurance Notification**

Adrienne Thomas

~~████████~~
~~████████~~

Member Name: Adrienne Thomas
DOB: ~~████~~

Reference Number: ~~████████~~
Insurance: BLUE CROSS

You have been referred by ~~██████~~ Lee, ~~██~~ to see a specialist. This letter is to inform you that we have faxed your referral along with any pertinent information to the specialist listed below.

Referred to provider information below:
~~████████~~ ANTIOCH

~~████ DALLAS RANCH ROAD~~
~~ANTIOCH CA 94531-88██~~
~~██████████~~

| Code | Procedure Name | Modifiers | Approved Quantity |
|------|----------------|-----------|-------------------|
| ~~██████~~ | REFERRAL TO HEMATOLOGY, EXT | None | 1 |

## Important Information

Patient's insurance is PPO/FFS/ MEDICARE. **Sutter East Bay referral dept is not able to obtain pre-certification for services rendered outside of SEBMF.** It is the patient's responsibility to contact their health plan directly to check for : (1) benefit coverage, (2) pre-certification requirements, (3) if provider requested is in -network, and (4) patient's financial liability.

If the Specialist requested is NOT In-network with your insurance, your insurance allows you to "self refer" to an In-Network specialist. Your insurance can provide you with a list of In-Network providers.

## Patient instructions

**Call the recommended or specialist of your choice to schedule an appointment. Your insurance allows you to schedule without a referral.**

Thank you from your Sutter East Bay Medical Foundation Referral Team

**What is retaliation?**

At PG&E, we don't tolerate retaliation against anyone who raises good faith concerns or has cooperated in an investigation. Employees may not retaliate or threaten retaliation. Leaders may not tolerate retaliation that they observe against another employee, and have a duty to act to report retaliatory actions that come to their attention. Retaliation is harmful and can have a chilling effect on other employees in raising concerns.

Retaliation is adversely changing an employee's condition of employment for a non-business reason. Examples include threatening an employee for raising a concern or moving their physical location without a legitimate business reason. An employee who speaks up in good faith will not be put at any disadvantage by PG&E as a result of his or her report.

PG&E takes reports of misconduct and unsafe work practices seriously. Your role is to bring forward allegations and unsafe work practices to leaders. You must cooperate with investigations by promptly responding to information requests. Be sure to provide complete, truthful and accurate information. Leaders must take action on issues brought to their attention, including reaching out to other resources such as:

· C&E Helpline for misconduct issues and guidance on policies

· CAP for unsafe work practices, non-compliance and process improvements

**1. Report:** An employee, non-employee worker or customer raises a potential misconduct allegation to their leader, Human Resources or the C&E Helpline.

**2. Assign:** Compliance & Ethics reviews the report and determines the appropriate next step, which in many cases will include an investigation. The investigation may be conducted by PG&E resources, including Human Resources or Corporate Security, or by outside investigators. If no investigation is needed, move to step 5.

**3. Investigate:** The internal or external investigator begins an investigation, if warranted. This may include interviews and/or a review of relevant documents, data or materials.

**4. Record:** The investigator documents the findings. When misconduct is substantiated, a report is distributed to the appropriate PG&E leaders and recorded in PG&E's case management system.

**5. Resolve:** Human Resources and the Line of Business work together to determine the appropriate next steps, which may include training, policy modification, disciplinary action or termination of employment. The investigator or contracted

agency notifies the employee, non-employee worker or customer who raised the concern that the investigation has been concluded.

**6. Track and analyze:** Compliance & Ethics tracks, analyzes and provides guidance to lines of business and PG&E leadership on trends and issues.

For more information, read our **Employee Conduct Standard.**

Safety Incident Notification and Response Management Standard (SAFE-1004S)

Enterprise Cause Evaluation Standard (GOV-6102S)

PG&E does not tolerate harassment of any kind, including sexual harassment. This policy includes any communication, text, image, data, sound, social media post or other information that is inappropriate, offensive or contains sexually explicit material. Employees who witness or are experiencing harassing behavior have a duty to speak up and report it. Employees who engage in harassment will face disciplinary action or termination of employment.

Read our **Policy for a Harassment, Discrimination and Retaliation-Free Workplace**.

**Bullying**

**Hazing**

Offensive or hostile behavior or other verbal, written or electronic communication that singles out an employee on the basis of a protected characteristic

**Behavior that unreasonably targets another employee**

Conduct that creates an in-timidating work environment

Conduct that interferes with an employee's ability to do the job

Sexual harassment (un-welcome sexual advances, requests for sexual favors, or other verbal, written or elec-tronic overtures or physical contact of a sexual nature)

Your conduct away from company property and outside of business hours could have a negative effect on your coworkers, the public, workplace safety, on PG&E's reputation and on our ability to serve customers. Conduct outside of work includes social media posts brought to the company's attention that violate the Employee Code of Conduct.

PG&E will assess off-duty conduct that is potentially detrimental to PG&E on a case-by-case basis and determine appropriate action(s).

PG&E does not tolerate harassment of any kind.

**If you see something, speak up.**

Limited personal use of certain PG&E assets such as personal computers, telephones and mobile phones, fax machines, copy machines and conference rooms is permitted if the use is incidental to business. However, PG&E assets are subject to monitoring and review, and employees should have no expectation of privacy when using them.

Employees who are issued company-owned devices, such as smartphones, should conduct company business on that device, not on their personal devices.

## AS A PG&E EMPLOYEE—

I will be diligent in protecting PG&E's technology system.

I will physically secure mobile devices.

I will observe all information security controls and never try to circumvent them.

I will immediately report any suspected or actual breach of PG&E's computer systems and networks to the **Technology Solution Center (TSC) at 415-973-9000.**

I will speak up about security concerns, including unknown people or packages and open doors or gates.

I won't let others tailgate into PG&E facilities and will follow proper badge protocol.

I won't take misuse or divert any PG&E assets for any reason.

I will respect limits on personal use of company assets.

Does PG&E own it? If the answer is yes, it's a company asset.

**Tangible assets** include materials, computers, phones, tablets, tools, real property, vehicles, physical structures, meters and service equipment.

**Intangible assets** include data, information and records concerning PG&E employees, suppliers or customers, and intellectual property and non-public information about PG&E.

As a PG&E employee— I will be diligent in protecting PG&E's technology system.

As a PG&E employee—I will follow proper record management practices.

Capturing and managing data effectively is critical for PG&E's operations.

Data management is a business-driven, enterprise-wide, shared responsibility that covers the full lifecycle of data. It includes the creation, storage, access, controls, governance, quality, meta-data, usage, analysis, security, retention and disposal of data.

Read our <u>Enterprise Data Management Policy</u>. (GOV-09)

Data refers to the raw facts or figures that form the building blocks of information.

Data are raw, unorganized facts that need to be processed.

Information is a collection of data that has been given value through analysis, interpretations or compilations in a meaningful form.

Information may be deemed a record or a non-record. Information, regardless of format, that documents business actions, transactions, decisions, and/or contractual, legal, or regulatory obligations are defined as records.

Accurate records are an essential part of PG&E's operations. To keep our system safe and reliable, we must always complete and document our work.

Each employee creates records and information. We are all responsible for managing PG&E records and information to verify they are complete, accurate, reliable, secure and available throughout their lifecycle.

Company records must be managed and stored in accordance with specific company policies, standards and procedures, including the Enterprise Records Retention Schedule. The schedule lets employees know how long records need to be retained.

Some company records may contain personal information or personal health information. See the Personal Information section

for more details. These should only be accessed by employees with a business need to know and should be stored according to PG&E requirements for storage of confidential or restricted information.

Disposition is the final action taken at the end of the retention requirement, which can include destruction, transfer to a third party or archiving. In the event of a legal hold issued by the Law Department, disposition of records and information may be suspended.

Read our <u>Enterprise Records and Information Management Standard</u> (GOV-7101S) and <u>Electronic Communication Retention Standard</u>. (GOV-7115S)

For guidance on recording meetings, read the <u>PG&E Recording of Meetings Standard</u>. (GOV-7116S)

## DOING BUSINESS FAIRLY

We do business honestly, fairly and lawfully. We respect our competitors and do not make inaccurate or derogatory statements about their products or services.

### INTELLECTUAL PROPERTY AND CONFIDENTIAL INFORMATION

Intellectual property and other confidential information should remain within PG&E and not be shared with outsiders. Examples of protected information are competitive strategy, costs and financing methods, trade secrets, pricing policy, contract terms, market surveys, and capacity plans and capabilities. If you are authorized by a director or officer to share confidential information outside PG&E, you must obtain a signed non-disclosure agreement from the third party to whom you disclose the information.

Works created by an employee within the scope of his or her employment are considered the intellectual property of PG&E. Tell your management about inventions and developments that you create within the scope of your employment or with the use of PG&E resources.

**AS A PG&E EMPLOYEE—**

○ I won't view confidential information for a non-business reason.

○ I won't use confidential information for personal gain.

○ I won't share confidential information without the appropriate approval.

**Copyright laws** make it illegal to copy or reproduce materials without permission of the owner. Examples of copyright-protected materials are books, newspapers, movies, computer software, drawings and musical recordings.

**Patents** are exclusive rights granted by a government to an inventor to manufacture, use or sell an invention for a certain number of years.

**Trademarks** are words, symbols, slogans and phrases that distinguish goods and services from others and are used to build brand identity.

**Trade secrets** include any information used by a business, such as formulas, devices or customer lists that have economic value but are not generally known and for which reasonable efforts have been made to preserve secrecy.

**AS A PG&E EMPLOYEE—**

○ I will keep PG&E's intellectual property and trade secrets confidential and will not disclose them to any outside party without prior approval from my director or officer.

○ I won't make unauthorized copies of software licensed to PG&E, load unlicensed software onto PG&E computer equipment or download unauthorized software from the internet.



## PERSONAL INFORMATION

As part of your job duties, you may have access to personal information in digital, hard copy or verbal form. This includes the personal information of PG&E customers, employees or suppliers. You must maintain the confidentiality and privacy of this information, and you may only access or disclose it with proper authorization or when legally mandated.

**What is personal information?**

Personal information is any data that could potentially identify a specific individual.

**What is protected health information?**

Protected health information includes personal data about medical conditions, medical treatment, medical history, occupational injuries or health care coverage.

**As a PG&E employee—** I will respect every customer's right to privacy and handle customer information with care and diligence.

**What is customer and/or employee personal information?**

Personal information is any information that, when used alone or combined with other information, can distinguish or reveal the identity of a PG&E employee, customer, stakeholder, or any other California resident.

Examples of customer personal information include:
- Customer name
- Address
- Phone number
- Social Security number
- Customer energy-usage data
- Online username, password and IP address

**What is employee information?**

In addition to these items, examples of employee personal information include:
- Salary and benefits information
- Health information
- Photographs
- Performance evaluations

**For a more comprehensive list, review the Information Classification and Protection Standard: (IT-5302S)**

Supplier information includes pricing and contract information.

**As a PG&E employee—** If I am unsure how to collect, access or protect personal information, I will reach out to the Privacy team at pgeprivacy@pge.com.



## Thomas, Adrienne

**From:**       Thomas, Adrienne
**Sent:**       Sunday, April 07, 2019 7:31 AM
**To:**         Kiavellanos, John
**Cc:**          
**Subject:**    RE: Re:  Non-Approval of Timecards
**Attachments:** RE: Timecard 2/23

Good Morning,

I write to you again; as I pulled the following report in my About Me File and I wanted to point-out that Supv-Wilmer Clark is once again behaving in a retaliatory manner against; yet another employee in the department.
To date these are all of my timecards he has not approved as a way to "get-back" at me (which dates back to February 2019).
He imposed an inquiry via e-mail on 03-25-2019 to which I immediately responded and to date he still has not approved my travel time for Saturday February 23, 2019.

| Personnel .. | Date | Sender Cost ... | Nu... | Atte... | Code Text | Premium | Activity Type | Receiver Ord |
|---|---|---|---|---|---|---|---|---|
| 115553 | 02/23/2019 | 11788 | 1.50 | 1002 | Travel @ 1.5 | | MGMTOT | 2029499 |
| 115553 | 03/02/2019 | 11788 | 1.50 | 1002 | Travel @ 1.5 | | MGMTOT | 2029499 |
| 115553 | 03/02/2019 | 11788 | 5.00 | 1000 | POT @1.5 | | MGMTOT | 2029499 |
| 115553 | 03/24/2019 | 11788 | 4.50 | 1000 | POT @1.5 | | MGMTOT | 2029499 |
| 115553 | 03/24/2019 | 11788 | 1.50 | 1002 | Travel @ 1.5 | | MGMTOT | 2029499 |
| 115553 | 03/30/2019 | 11788 | 1.50 | 1002 | Travel @ 1.5 | | MGMTOT | 2029499 |
| 115553 | 03/30/2019 | 11788 | 4.00 | 1000 | POT @1.5 | | MGMTOT | 2029499 |

Again, this has been his behavior for the past 10-months and his actions are becoming more and more egregious.   He has told me personally I'm not worried about Andy or John; in very confident manner.
Yet, tells upper-management his staff is being uncooperative.

Several of my colleagues in this group have come to realize that Overtime must be a metric on his scorecard; which is why he continues to mislead upper management stating this department does not need any help.
If upper-management were to request a Hiring Hall for this department it would then open overtime (per the Union handbook) and he tries to avoid it at all costs; due to his metric not the customer needs and to serve his own goals.

Kathy and Rae had a meeting with Wilmer in December 2018, in which he advised he would began approving timecards timely.   Wilmer have also stated to the group various times he would also approve timecards on a timely basis.
Based on the above; this continues even after the over-time hours were published and Andy was clear about the guidelines.

It's noteworthy to add; Friday 02-22-2019 was the very last day we have seen our colleague – Sal Campos; due to the bullying and intimidation antics displayed by Supv-Wilmer Clark.
I'm a witness to the entire incident as well as several employees from the scheduling group; as I tried to mediate the discussion between Sal and Wilmer.

I have hearing scheduled with the DFEH on September 5, 2022 from 9am - 10am

## Confirmation

**Your case has been submitted.** Your case ID number is 202204-16663611.

You have successfully submitted an Intake Form with the DFEH. This is not a filed complaint. The intake interview process will determine whether the DFEH will secure a filed complaint for investigation.

Please be available during your one-hour appointment window and allow up to an additional hour for the actual intake interview itself.

Your appointment is scheduled on Monday, September 5, 2022 from 9AM.

Sincerely,
Department of Fair Employment and Housing



Leonard reviewed Enterprise Compliance Tracking System (ECTS) investigation data regarding Thomas's allegations against other employees. The following cases were located.

| Case # | Role of Thomas | Allegation | Investigating Entity | Status | Conclusion |
|--------|---------------|-----------|---------------------|--------|-----------|
| 13-1858 | Complainant | Harassment of Thomas's daughter by employees | HR | Closed | Unsubstantiated |
| 15-1265 | Complainant | Harassment by Supervisor (Fredriksson) | HR | Closed | Unsubstantiated |
| 16-1645 | Complainant | Harassment by Supervisor (Elizondo and co-worker) | HR | Closed | Unsubstantiated |
| 19-0759 | Complainant | Harassment by Supervisor (Clark) | Outside Counsel | Closed | Unsubstantiated |
| 19-1645 | Complainant | Fraud and criminal acts by employee (Souza) | CSD | Closed | Unsubstantiated |
| 19-2668 | Complainant | Time reporting fraud by multiple employees (Clark, Klavdiano, N & D Souza) | HR | Closed | Unsubstantiated |
| 20-0587 | Complainant | Falsification of company documents (Clark) | CSD | Closed | Unsubstantiated |
| 20-2697 | Complainant | Stalking by Supervisor (Clark) | CSD | Pending | Unsubstantiated |

**Alleged Discipline:   (From HR to the Union)**

1. Mitigation Letter in Lieu of Termination Letter issue 3/24/21 -informed Adrienne that the violations occurred would have resulted in termination if it weren't for her tenure of service.
2. DML issued 3/26/21 – discussed TD 9100P-01, Code of Conduct, Utility Standard: Sec-1005s and IT-5302S
3. Coaching and Counseling issued on 6/10/21 as a result of not adhering to TD-9100P-01 section 7.1.1. Discussed adhering to the standard and responding back to customers within 1 to 2 business days (depending on the type of customer inquiry).

   #1)  I was never issued a Coach and Counsel (the company was not able to find any paperwork to prove I was coach and counseled)

   #2)  Initially they told me I would be fired in because I did not call a customer back within 48hrs.; but on this paperwork below; it says 2days.

Wilmer did tell Sal Campos he could only work 2hrs on the afternoon of Friday 02-22-2019. This was the very next day after the meeting both you and Andy had with our team on the morning of Thursday 02-21-2019 and the same afternoon new OT Guidelines were published. (it's noteworthy to add that Monday 02-18-2019 was a company holiday – President's Day)

There is no way that Sal could have already worked 18hrs for the week by Friday afternoon, with Monday being a Holiday.   There was also no reason for Wilmer to disclose to me during the dispute that Sal had informed him of a medical condition.

I mention all of this in an e-mail; as I'm assuming Wilmer realizes I'm a witness at this point; for which I now feel I'm being retaliated against.

I'm advising in e-mail; as I will be out of the office tomorrow to attend further doctor appointments and meet with the Nurse Hotline Clinic.

I shall also proceed with filing a C&E Complaint with respects to the retaliation; as well as the disparaging "racist" comments Wilmer has made directly to me on 3 separate occasions, which I've asked him to refrain from.

Regards,

"Great things in business are never done by one person, they're done by a team of people." – Steve Jobs

Adrienne Thomas - Sr. New Business Rep / (Comm, Residential PEV, Cal Trans)

1850 Gateway Blvd – 5030C   Concord, CA   94518

8-459-6935

925-459-6935

 **Pacific Gas and Electric Company®**

## Thomas, Adrienne

| | |
|---|---|
| **Subject:** | Fit4U Employee Engagement Meeting |
| **Location:** | 1850 Gateway Blvd, Concord RMC, CR 7016 |
| | |
| **Start:** | Mon 11/26/2018 4:00 PM |
| **End:** | Mon 11/26/2018 4:30 PM |
| | |
| **Recurrence:** | (none) |
| | |
| **Meeting Status:** | Accepted |
| | |
| **Organizer:** | Grant, Lorissa |
| **Required Attendees:** | Thomas, Adrienne |

11/14/18: Please note the change in meeting location, Adrienne. I do not have a conference room available at the S/C from 2 p.m. on 11/26. If you cannot come to the RMC building please let me know. Thanks for your flexibility.



Dear Adrienne,

You have been selected to participate in the PG&E Fit4U pilot program (Fit4U); a voluntary, by invitation only, 6-month pilot program to improve your health and decrease the likelihood of future injuries.

**Why are we offering you this?**

At PG&E, we value our employees, and we know that a healthy workforce is a productive workforce—both on and off the job! Fit4U is aimed at:

- Improving the health and safety of our employees, reducing the likelihood of injuries, and empowering our people to make sustainable, healthy lifestyle changes.
- Providing services that are easily accessible and more likely to be used.
- Providing additional tools to help employees be healthy, happy, productive and safe.

**PG&E Fit4U Provides:**

- Six-month gym membership*
- 24 sessions of personalized fitness training*
- Free, weekly onsite one-on-one health coaching during work hours. Possible topics include:
  - Personalized nutritional counseling
  - Smoking cessation (if applicable)
  - Stress management
  - Work-Life Balance
- Access to onsite EAP counselors during work hours
- Mindfulness/meditation resources

**Next steps:**

More information on the program will be shared during a one-on-one meeting with Fit4U program leads. We will address your questions and walk you through the enrollment packet in person. Should you choose to participate in the pilot program, you can complete the documents and give them to the program lead or return them by email/mail. Once you have submitted the enrollment documents listed above, you will receive further instructions from the Fit4U Program Manager, Lorissa Grant. If you have any questions or concerns please reach out to her at 925-667-1413.

We are excited about the Fit4U journey that lies ahead, as you set goals and make the most of the personalized services to improve your well-being and make positive lifestyle changes.

Your PG&E Fit4U team



Corporate Safety and Health
Fit4U: Work, Thrive, Live.

* All services offered by Fit4U are company funded. However, the cost of gym memberships and personal training are considered taxable income. The costs of these services will be reflected in the employee's paycheck and the amounts grossed-up to cover the taxes. For information on how this may impact you, please contact your tax professional.

1